Good morning, your honors. May it please the court, Gavin Shriver, Kazowitz-Benson-Torres, on behalf of the plaintiff appellant, Andre Scaminaci. We are here appealing the district court's dismissal of my client's amended complaint against his business partner, Omar Jaffrey, in what is now the first of now three different litigations pending between the two parties, the last of which was filed after this appeal was fully briefed in the New York State Supreme Court, in which Mr. Jaffrey brings claims under the same 2018 agreement out of which the first claim I'll be discussing today arises. Here in this case, as to that Mr. Scaminaci lacks standing to sue Mr. Jaffrey for breaching his agreement to give Mr. Scaminaci a 5% carried interest in Mr. Jaffrey's investment fund. And the district court based its decision on its view that Mr. Scaminaci's complaint needed to allege two things. First, that Mr. Jaffrey specifically and expressly tell Mr. Scaminaci that he disputes Mr. Scaminaci's claim that Mr. Jaffrey's fund actually made distributions to other investors and failed to include Mr. Scaminaci. But Mr. Scaminaci's complaint did not need to allege any of these things. And it all starts, and we submit ends, with the standard for pleading standing. Because as this court held in a- Has Mr. Jaffrey disavowed your client's entitlement to a 5% carry share? We believe that he disavowed it through his failure to acknowledge it, through his repeated failure to acknowledge direct requests. Is it a repeated failure? So how many times has a request been made and been revoked? In our complaint, we allege multiple times. We don't identify with specificity. So that's why I'm asking. I believe it's two. Okay. But I don't think there should be a standard here. Because, again, it all starts with the standard for standing, which this court held in Ross is a low threshold. This court held in Harry is a lower threshold than that for sustaining a valid cause of action. On top of that, in cases to- It doesn't make sense that if you repeatedly ask and he refuses to acknowledge the carry share, that maybe at some point it amounts to a rejection of the entitlement to the carry share. But certainly, if you sent an email and he didn't respond, that would not be a repudiation of the contract, right? Absolutely, Your Honor. There has to be some sort of line here. On the converse, though- Why is two requests and the failure to get back to you on those two requests, why does that amount to disputing Mr. Scaminacci's entitlement to the carry share? I'd say for two reasons. First, and again, it goes back to the standard. This is not a Twombly plausibility standard as to whether there's a dispute here. It is a standing inquiry, which is a low threshold. So is there a dispute? Well, I can tell there's a dispute, for one, because we're here. And Mr. Joffrey has not- Is there any injury? Absolutely, Your Honor, there is an injury. And that's the deprivation of this asset. This is a valuable, valuable asset that has with it not only- But I guess, when would he be able to realize on that 5%? Frankly, Your Honor, he could realize it immediately by selling it to somebody else, by pledging it as collateral, as one can do with any asset, whether it's a stock, a bond, or other financial asset, or for that matter, a parcel of property that has not been monetized. I'm going to say that there's a dispute because we're here. I think the point you were going to make is you've been litigating this question and he still refuses to just say, yes, of course, you're entitled to the carry share. Is that right? Precisely, Your Honor. And the converse rule would essentially allow Mr. Joffrey to create a loophole in standing because he could, by virtue of not saying the magic words, no, he could simply sit back, make sure that his distributions remain confidential so Mr. Scaminacci can never learn of them and allege them in his complaint, as the district court suggested he'd be required to do, and never have standing permanently. Does your carry share interest entitle your client to real-time information about the status of the funds? Is that a corollary of the share? We believe so, Your Honor, yes. Has there been a request for an accounting of any sort? After we filed this case, we've been litigating the issue. We did not expect the result in the district court, so we have not made any additional requests for information. But that raises an issue, of course, is that if there is an affirmance, we would simply request that information, and I suppose we'd be right back in the place we are right now, which I think lends to the reasons why there is such a low standard for pleading injury in fact and pleading a controversy here. It's very clear that Mr. Joffrey does dispute and does not acknowledge Mr. Scaminacci's entitlement to a carry share. Can I ask about the contracts that Mr. Scaminacci entered into with the NDAs and the financial advisors? So the counterparty in those contracts was Mr. Scaminacci's own entity, but it seems like in the district court you acknowledged that, you know, for all intents and purposes, it was essentially committing melanin, right? I think the acknowledgment in the court below was for the purposes of a preliminary injunction. At that stage, we were acknowledging it for purposes of the argument. I don't know that it was an acknowledgment of fact, a stipulation of fact, rather, for the remainder of the case. So do you acknowledge that Scaminacci committed melanin to any contracts or no? We would argue that he did not. Melody, I would submit, probably does not believe that it is bound by NDAs it did not sign. But then you were sharing information that was about Melody, not about the separate entities that Mr. Scaminacci controlled, right? That's true. And if Mr. Joffrey had asserted Can you do that? Can you share confidential information about Melody and have the counterparty sign a nondisclosure agreement with some non-Melody entity not to disclose it? And that protects Melody's information? That's not a theory that Mr. Joffrey has advanced for liability. I don't think that there would be any, certainly not in this case, rather, that I don't think there would be any damages or any harm there that would flow from that. And I'm not sure whether there would be liability either, but I don't think it's a breach of contract because Mr. Scaminacci did not bind the specific Melody funds that are identified in the 2020 agreement that would trigger liability under the 2020 agreement. But more importantly for this appeal is the fact that the NDAs Mr. Scaminacci entered into were not material. Or rather, the district court did not and could not find that they were material. In fact, the district court's specific So if those NDAs and the contracts with the financial advisors were not material, then why are the contracts into which Mr. Joffrey entered material? They were also for financial advisors and lawyers, right? The materiality of Mr. Joffrey's breach is not actually relevant. We have a right to sue Mr. Joffrey for breaching his agreement. If that agreement is small, major or minor, material or immaterial, a breach of a contract gives rise to damages or other remedies. You're not seeking No, sir. Well, if on the face of the complaint it appeared not to be material, then that would be a basis for dismissing a breach of contract claim, wouldn't it? Respectfully, no, Your Honor. A plaintiff can sue a defendant for a minor breach. In fact, that's what this court's case law, like Process America and others, say. A partial breach does not allow a party to terminate a contract. It gives the right to sue for damages. So it may be failure to include a single widget. A non-material breach is not a breach, right? A non-material breach is absolutely a breach. The failure to include a single widget in a 20,000-widget order You earlier said that the reason why Mr. Scaminacci's breaches should not be considered breaches was because they were not material. So then weren't those also breaches? Respectfully, if I said that, I misspoke. His alleged breaches are not material, clearly, because it's an issue of fact as to materiality. In this court's case law, it's clear that you can only decide that a breach is material if the issues are certain, if the inferences are certain, and here they are not. But the significance of whether it's material, if I'm understanding your view, is not whether your client could be sued for breach of contract. It's whether or not the breach excused performance by the other party to the contract. Precisely, Your Honor, because Mr. Joffrey has asserted a defense, an affirmative defense, of prior material breach. So one of the things I'm trying to figure out is that what you're seeking, you're not seeking damages in connection with this breach at this point. Am I right about that? No, Your Honor, we're seeking a declaratory relief as to the breach of his 2020 agreement. So you're asking us to tell you whether this mutual agreement to get mutual agreement for any contracts affecting Melody's was excused or terminated, essentially, by your client's breach or alleged breach? Precisely. I'm reading the briefs and I see a representation in a felon's brief that, as it turns out, that's no longer an operative contract provision because we've now entered into a new contract to entrust decisions to a third party. Is that true? That contract is not in the record, and I don't, respectfully, I don't believe that it is true. It is true that the parties have entered into an agreement to assign primary control of the fund to a third party administrator. However, both Mr. Joffrey and Mr. Scaminacci remain in consulting roles, and the concern by Mr. Scaminacci, and it's a legitimate and real concern, is that because Mr. Joffrey appears to, not just appears, has taken the position that I am no longer bound by the 2020 agreement because you, Mr. Scaminacci, breached it back in 2020 with these NDAs, that he doesn't have to consult Mr. Scaminacci? So the agreement that's not in the record, by the way, mootness, we rarely have things in the trial court record when something becomes moot on its way to us. That's why we deal with it. That's why I'm asking, right? So the agreement that assigns us third party management authority, does it define the respective roles of the principals here and what they're entitled to, or does it leave in place the 20, like what's the role of the 2020 agreement relative to this new agreement? I don't believe that it modifies or obviates the 2020 agreement at all. As to the specific individual's remaining roles with Melody, those are governed by separate consulting agreements, of which I must confess I don't know the specific terms. And when I was referring to the record, I apologize. I did not mean a district court record. I meant this record. They were not placed into the record by Mr. Joffrey in connection with their briefs. OK, well, thank you, Mr. Shriver. We have a little time for rebuttal, so we'll hear from you again. But let's turn to the appellee, Mr. Brockett. So does Mr. Joffrey acknowledge that Mr. Scaminacci has a 5% carry share? Mr. Joffrey has never disputed. Does he acknowledge that he has it? Because if the answer is yes, then we can probably not worry about that claim. Right. Well, I'm not authorized to make any stipulations here today. But that's true. Doesn't it mean that there is a controversy? Right. So the same inquiries about whether it's a case or controversy. So Mr. Scaminacci says he's entitled to a 5% carry share. And so we ask you, well, what's Mr. Joffrey's position on that? It's that, well, he doesn't have a position, he's not sure, or he's unwilling to say. Doesn't that suggest that there really is a dispute over whether Mr. Scaminacci is entitled to a declaration as to the status of the carry share? No, because Mr. Joffrey has never disputed anywhere. Why won't you acknowledge that? I acknowledge that he has a contract that gives him the right to a 5% carry. I acknowledge that. So is there any reason to think that Mr. Joffrey would not honor that? I have no reason to believe that Mr. Joffrey does not intend to honor the 5% carry right. But as you know, in these private equity funds, the carry share isn't paid until five to seven years down the road. Does the carry share carry with it certain rights that could be exercised? Yes, it does carry with it certain rights. Including the right to information? Including the right to information. He's not been denied any information. And he's not attempted to sell it or to collateralize it? He's asked for an acknowledgment and there's been no response. I'm sorry, Your Honor, I didn't hear. He's asked for an acknowledgment of his rights and there's been no response. Well, we don't know what he's talking about there. I think that he's been cued. One of the demands has been in the litigation. So we don't really have any idea of what the context of that is. But it's hard to determine whether there's a controversy over it. And he's litigating to get a declaration that he's entitled to the carry share. And throughout that litigation, the other party more than acknowledged that he is. Doesn't that suggest that there is a case or controversy between the parties? But, Your Honor, we're not. Right. If that were the case, yes. But we're not disputing. We're not disputing that he has a contract right to a 5% carry. So you would stipulate to that? Well, I didn't come here authorized to make stipulations on behalf of my client. But, again, I can stipulate that he has a 5% carry share set forth in the agreement. And we have never disputed that he has a 5% carry right. We've not denied him any information. He's not been denied any rights that any other limited partner in the fund has. And so there is no case of concreteness and immediacy for this court to decide. You would acknowledge that if your client had repudiated or disputed the existence of that obligation, you would have standing to get a declaratory judgment on the question. That's not where the issue is, right? If your client had disputed, had repudiated that, or taken a position that it doesn't apply, there's no question there would be standing to bring a declaratory judgment. Sure, if there were a dispute of sufficient concreteness, yes. Why isn't the allegation, which we're taking as true because we're at the pleading stage, that he's asked multiple times and not gotten a response or acknowledgement, why isn't that sufficient to create essentially a constructive repudiation? Because there has to be a dispute, and it has to be concrete. It has to be of sufficient immediacy. We do not dispute that he has a 5% carry right set forth in the 2018 agreement, and Mr. Jaffrey has never disputed that that carry right exists. This is a subtle distinction, and I'm trying to understand it. You're being very clear that you don't dispute it, but you're also, I think, being very clear that you don't have the authority to acknowledge it. Am I understanding where we are right now? I mean, yeah, I didn't come here with any authority from my client to make acknowledgements, but I think I am effectively acknowledging it by saying there is a contract that gives him a 5% carry right, and we have never disputed that that right exists. As a general matter, every contract has a covenant of good faith and fair dealing, right? Sure, yeah. So if, in fact, he does have that contract right, and he just wants to get documentation of it or acknowledgement of it from the counterparty, and the counterparty just persistently refuses to give that, doesn't that seem like a violation of the covenant of good faith and fair dealing? Yeah, I mean, I think potentially, I think it would depend on the context and depend on the facts. If the demand is made as part of a litigation, maybe not, no. But if he had sent us an email or he had sent a formal request for an acknowledgement of his 5% carry, and we had refused to acknowledge that or respond to it, but we don't know what he's talking about. Isn't that what the allegations say? Sorry? Isn't that what the complaint says? That's what the complaint says, yes. So you take the complaint as true, right? We assume, yes. But that's not a motion to dismiss stage if you're just disputing it on the facts. We assume the complaint is true, but the complaint makes no allegations that this has ever been disputed. Now, there is no injury to him if down the road, okay, the assets are harvested, these businesses are sold, and there's carry to pay, and Mr. Jaffray writes him an email and says, no, you don't have a 5% carry, yeah, at that point in time, he can bring a lawsuit. Then there would be a no question of standing. But right now, there's no injury to him, okay, in not being able to bring this claim because there is no dispute that he has the contract right. I move on to the other issue, and that is, as I understand it, a partial breach does not entitle the non-breaching party to treat the contract as over. Isn't there an issue here as to whether the NDAs that the plaintiffs signed were at most an insubstantial breach or only a partial breach? And if so, isn't there still a breach of contract claim here? No, because you don't have to go any further than the amended complaint itself to see that this was not a partial breach. It was not an unintentional or immaterial breach. It was a material breach by his own allegations. First, Mr. Scaminacci admitted below that he breached the dual consent. But even if it's a material breach, isn't there an issue as to what the appropriate remedy is, whether it would simply be damages, and then there's another issue which I'd like you to address, and that is whether Mr. Joffrey reaffirmed the contract by seeking to enforce it. Sure. No, I think New York law is clear, Your Honor. When there's a material breach of contract, the non-breaching party has an election. He can either continue to perform and waive the breach, or he can repudiate it. Okay? Mr. Joffrey, in this instance, repudiated the contract because of the material breaches that were carried out by Mr. Scaminacci. That's New York law. The complaint alleges twice that he reaffirmed it by seeking to enforce the contract, even after these breaches. Right. So four months, three to four months after the assets were sold, the- Why isn't it a plausible argument that Mr. Joffrey reaffirmed the contract? Right. Well, the short answer is, is that because in order to have a reaffirmation, the non-breaching party has to make an election to continue to receive benefits under the contract, and there has to be detrimental reliance. This claim is based on a single sentence. In the event of complaint where he says, long after the transaction was over, they sat down and he said, are you going to pay certain employees? Okay, in accordance with the 2020 agreement. So there's another part of the 2020 agreement. I'm sorry, the 2018 agreement, I believe. Or 2020 agreement, sorry. And that's it. That's all he alleges. He doesn't allege that there was any agreement to pay or anything of the kind. There was no- The position actually is that the 2020 agreement is no longer operative after his signing the NDAs, right? Yeah, that's right. The whole thing is done. That's correct. There was a breach. He should have responded to that. You're saying Skamination should have responded to that email by saying, no, I'm not going to pay the employees in accordance with the 2020 agreement because the 2020 agreement is no longer operative. Well, he very well may have done that, but I don't want to go outside the complaint. That's all the complaint alleges. The complaint doesn't allege that there was any agreement to pay in accordance with the 2020 agreement. It does allege that. Bottom of page A90, as recently as November 2020, Joffrey has sought to enforce the 2020 agreement, wrongly asserting that Skamination was required under the 2020 agreement to pay. It alleges that Joffrey's position was that Skamination had to pay under the 2020 agreement. Well, with all due respect, Your Honor, those allegations do not make out a reaffirmance of an agreement. To have a reaffirmance, there has to be- The appreciation party has to make an election to continue to receive benefits under the contract. There's nothing in that passage that you read or anywhere else in this agreement that suggests that Mr. Joffrey agreed to continue the agreement and to receive benefits under it. There's some vague allegation about some conversation about this. It doesn't allege what the ultimate conclusion was. And so there are no allegations that would make out a reaffirmance of this agreement. Can I ask you about something that you said a moment ago? You said that he admitted that he breached a contract before the district court. But I just asked Mr. Schreiber whether there was a breach of the contract because actually Melody was not the counterparty on the NDA or the financial advisor contracts. And so Melody was not committed. So why is it even a breach? Well, I think his counsel stipulated below, and it's a stipulation that's binding here, that those agreements should have been deemed to be with Melody. You said that thing about being deemed. But actually, I'd just like you to explain why we would deem it to be a contract on behalf of Melody as opposed to the actual parties that signed the contract. Well, I think that his counsel realized that to take the position that he was trying to take, that this was an agreement assigned by some unrelated Melody entity, because he gave all kinds of Melody confidential information to third parties under this agreement. And if Melody didn't authorize that, then he's in bigger trouble. So I think his counsel just acknowledged, well, let's deem these to be on behalf of Melody so we don't have to deal with that issue. The stipulation was pretty equivocal. We do agree that there were or may have been nonsubstantive technical breaches. No, I think there was another portion where his counsel said specifically that for purposes of this case, that we should deem these to be breaches. The contract should be deemed to have been entered into with a Melody entity, not some third party entity that Mr. Scaminacci had created that was unaffiliated with Melody. No, he says before that, we'll deem it to be of Melody. I think that's what you're referring to. Correct, correct. But then he goes on. I'm just saying, I don't know that he agreed that these were material breaches. To the contrary, he said these are nonsubstantive technical breaches. No, he didn't agree that they're material breaches. He agreed that there was a technical breach. But I'm arguing here. But if it's only a technical breach, don't you get into the analysis of whether there was adequate performance or substantial performance notwithstanding these nonmaterial technical breaches? He agreed that there was a technical breach. I am suggesting and arguing that his own complaint shows the breach was material. He admitted he signed all these NDAs, that it included lockup provisions that required all potential acquirers to go through him. He also entered into agreement with a financial advisor. He entered into a term sheet with Digital Colony, setting forth his position in the post-acquisition entity. And all of these were done without the knowledge or approval of his partner, Jeffrey. Now, he says these are the same things that Mr. Jaffrey did when he took over the sales process. Well, if they're material, if what Mr. Jaffrey did was material, then what he did must be material as well. But more importantly – So I get that argument, which is why I asked that of opposing counsel. But so he says, well, that's to be decided later. So even if it turns out to be nonmaterial, we still state a claim for breach. Why isn't that right? Well, I mean, he alleges in his complaint this dual consent clause was a critical understanding concerning the governance of the Melody Funds and the entire purpose of the 2020 agreement. This provision was the entire purpose of this agreement. He says that both of them are material, that the breach of Mr. Scaminacci was material. And therefore, if the agreement were still operative, the conduct of Mr. Jaffrey would have been a material breach. Right. So if they're both material, then Mr. Scaminacci breached the agreement. So what about the scenario in which they're nonmaterial, in which it's minor nonmaterial breaches? So is it possible that Mr. Scaminacci engaged in a nonmaterial breach and then that meant that the agreement was not terminated? And then we have to do an analysis as to whether Mr. Jaffrey breached the contract later. I mean, yes, that's your statement of New York law is true. If this is deemed to be a technical or nonmaterial breach, then technically Mr. Scaminacci would still be able to sue under the contract. But I submit to you that there's no scenario here where what Mr. Scaminacci did was somehow minor or unimportant. But Mr. Jaffrey's alleged breaches were material. There's no scenario. If they were both if they were both nonmaterial, that was the result. They were both nonmaterial. Well, then there'd be no breach of contract by either party. But can I just, I think I want to get to- Can I actually, I have- Sorry? Were you trying to shift gears because if this is a- No, no, I'm happy to answer any other questions you have. So I just, one thing I want to be clear about in terms of your understanding or your position as to the status of the 2020 agreement. Yeah. There's a five page agreement that has lots of provisions including hiring consultants and what they're going to be paid and other things. And then there's a paragraph in that agreement that deals with this right at the very end, this dual consent provision. Is it your position that the entirety of the 2020 agreement is now ineffective as a result of the breach of that paragraph? Or is it your position that the dual consent requirement was essentially knocked out of the agreement, but the rest of the agreement stands? No, the dual consent was material. He admitted it was material. And a breach of that, a material breach of that kind repudiates the entire agreement. The entire agreement. So all the other stuff in the agreement about hiring. So how did things proceed? I'm just trying to think, in the absence of this agreement, what becomes the- Is there some default prior agreement that describes how these two partners are operating vis-a-vis their joint enterprise? No, because at this point it's moot, Your Honor, because there's no longer a meaningful controversy here because the parties have agreed to dissolve these funds. They have appointed a third party liquidator to oversee and carry out the liquidation. There is an independent trustee now, an entity called Semaphore, that is the manager, that is conducting all of Melody's business going forward. And the court can take judicial notice of these- He's not trying to enforce the agreement going forward. He's trying to get damages for a past breach, right? No, he's trying to get a declaratory judgment right now. Well, that's of the other- Yeah, but the point is, is that- Is all of that in the record? This Delaware proceeding that they've- The new- Yeah, sorry. The new proceedings, you're saying we can take judicial notice of it? It's not in the record. Yes, it is. Well, there's a Delaware Chancery Court disillusion that describes all of this. I'll give you the site. It's CA number 2022-0008, PAF, Delaware Court of Chancery. And you can see that there is no issue going forward under this agreement because there's a third party manager that's making all decisions and the funds have effectively been dissolved. So, I do submit- I'm puzzled that that was sort of slipped in as an alternate argument in your brief and haven't provided the paperwork and whatnot. I mean, if this provision that's all about a declaratory judgment is no longer operative, why haven't you given us this information and moved for dismissal on the grounds of mootness or I don't know? Well, we argued it in the brief and the Delaware proceeding, I think, came after. I'd have to think about that, but the Delaware proceeding came later, but we do certainly argue it in the brief. Yeah, so it's not something- But I do think it's the most important point here because the parties, as I said, this has all happened. It's real. It's not something that's going to happen in the future. There's a Delaware court of chancellor proceeding. It's almost done. There's a third party manager running all the businesses, and so it would be moot to issue a declaratory judgment resolving disputes between these two gentlemen as to who bridged first and who didn't and was it material, was it not. That's not a meaningful- Do the rights vis-a-vis, I think what I heard your colleague say is that even in the context of this dissolution, this paragraph C of the 2020 agreement is the source of his client's right to sign off on decisions. Is that still operative in any way? No. Why not? Because there's a third party manager that's making all decisions. So the partners don't have to get consent from each other anymore. The 2020 agreement is completely moot. There is no meaningful controversy over interpretation of that agreement any longer. Okay, thank you very much, Mr. Brockett. Let's turn back to Mr. Schleier for the vote. Thank you, Your Honor. Maybe you should start by just addressing this question of mootness. So what about your claim for breach? Is it still a live case or controversy? We believe so. And I'll start with what was put into the record, which is essentially nothing. There is no citation to the docket in Delaware. But on this claim for breach based on Mr. Jaffray entering into the agreements, are you just seeking a declaratory judgment or are you also seeking otherworldly- Counsel is correct. We are only seeking a declaratory judgment for breach of the 2020 agreement to ensure that my client is protected going forward. Okay, so then why do you need that protection going forward if we have this other agreement? Because Mr. Scaminacci and Mr. Jaffray continue to work with the harvest of these funds. The dissolution has been sought. I think if one checks the docket, it actually, there is no agreement that, to my knowledge, has been filed on the docket. But dissolution has been sought. This harvest will take a while. And to the extent that Mr. Jaffray is making decisions in connection with his role, his remaining role, Mr. Scaminacci is very concerned that Mr. Jaffray will unilaterally exercise that right and potentially in favor of his other existing funds. But isn't this third-party manager handling all that now? Primarily, yes. But Mr. Scaminacci and Mr. Jaffray still have roles. Can you be more specific as to what the residual authority is that they respectively retain in the face of this proceeding, which I'm not finding on the Court of Chancery docket yet? That's an issue, which is that the agreement, I don't have it in front of me. It's not on the docket. It's not on the docket in Delaware, I believe. It's not on the docket in this court. Even though the Delaware case was filed, and I believe there was a stipulation as to the dissolution before the district court's decision in this case. It occurred, that case was filed, I believe, in January of 2022. The district court's decision in this case was March of 2022. So forget before this case was fully briefed. The Delaware case existed before this appeal was even filed. Okay, but if the argument is it was moved before, that doesn't necessarily help. I think our position is this is an issue for remand. This is an issue for the district court and a full record to determine mootness, because Mr. Jaffray has failed to provide a full record for this court to enable this court to decide the issue of mootness. It may be that the district court exercises its discretion and determines that this case has been mooted by the agreement involving Semaphore. I don't think it will. We're the ones who are being asked to essentially spend time interpreting the provision and the consequences of actions about something that we're now hearing an allegation has no operative effect in the world. So don't we have to ask you questions and figure out whether it's moot before we go ahead? Certainly, the court has an obligation to ensure that it has jurisdiction and the like. And I submit that it is not moot for the reasons I've stated, which is that Mr. Jaffray, Mr. Scaminacci continue to have roles in connection with the Harvest. The details of those roles, I admit, I don't have in front of me, but that is because they're not in the record. And on a full record, we can determine that. And if the district court decides that there's no jurisdiction, it will make that determination. One last point. My time is up. The first thing that the counsel said related to Mr. Jaffray has never denied that my client has this Cary share. I'm not sure that's quite true. The only way I can reconcile that is that Mr. Jaffray does not deny that the words say what they say in the contract. But he does very much dispute whether my client has a right to exercise his rights, whether he has defenses to that provision. And I think that is the very, very slender read that was trying to be drawn out here by counsel. Thank you very much, Mr. Schreiber. The case is submitted. We'll move to argument next in number 21, 21-17. CKD project versus Fresenius Medical Care. Thank you. Mr. Miller? He's on Zoom. Oh, Mr. Miller is on Zoom, so we're going to open up the Zoom. Okay, Mr. Miller, whenever you are ready. Just getting my gear on here, Your Honor. Thank you. May it please the court, my name is Dan Miller. I represent CKD Project, the appellant in this matter. The district court's decision below is based on two paragraphs from a 240-page FCC filing. And for the court's reference, since this appeal is based entirely on those two paragraphs, the language is quoted in full in our opening brief on pages 14 and 15. As the court can see at a high level, these two paragraphs articulate in rather sanitized legalese the routine run-of-the-mill and ever-present risks that every health care company in the United States faces on a daily basis. Given that the appeal rests on these paragraphs, I submit that a more granular look at the language is worthy, is worth,